UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEMETRA BINDER, et al.,

                              Plaintiffs,

          v.

MICHAEL KORS (USA), INC., et al.,

                              Defendants.

23 Civ. 3941 (DEH)

**MEMORANDUM OPINION
AND ORDER**

DALE E. HO, United States District Judge:

Plaintiffs Demetra Binder, Angela Waldner, Jennifer McCall, and JoEllen Barraclough ("Plaintiffs") assert claims against Defendant Michael Kors (USA) Inc. ("MK"), under New York, New Jersey, California, and Oregon state laws. *See* First Am. Compl. ("FAC" or "Amended Complaint") ¶¶ 14-31, ECF No. 22. Plaintiffs claim Defendant MK engaged in a deceptive pricing and advertising scheme involving merchandise sold at its outlet stores. Defendant MK moves to dismiss the Amended Complaint pursuant to Rule 9(b) and 12(b)(6).[1] *See* ECF No. 25. For the following reasons, Defendant MK's Motion to Dismiss the FAC is **GRANTED in part** and **DENIED in part.** Specifically, Plaintiffs' claims under New York and New Jersey state laws are dismissed; Defendant's motion to dismiss Plaintiffs' claims under California and Oregon state laws is denied.

## BACKGROUND

The following facts, taken from the Amended Complaint, are assumed to be true for the purposes of this Motion. *See, e.g., Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001).[2] This

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.

[2] Unless otherwise noted, when quoting judicial decisions, this order accepts all alterations and omits all citations, footnotes, ellipses, and internal quotation marks.

case is one of many "'outlet store' cases that have been filed in federal court in recent years," and, like those other cases, "challenges defendant's alleged practice of pricing its products in a way that misleads buyers into believing that they are getting a steep discount on products when, in fact, there is no discount at all." *Binder v. Premium Brands OPCO LLC*, No. 23 Civ. 3939, slip op. at 1 (S.D.N.Y. June 11, 2024), ECF No. 37.[3]

Defendant MK is a retail seller of apparel, bags, and accessories. FAC ¶ 14. Plaintiffs allege that Defendant MK's merchandise includes price tags with "false reference prices" listed as either "our price" or "MSRP." *Id.* ¶ 14. The four named plaintiffs visited and purchased products at MK outlet stores in California, New Jersey, New York, and Oregon between May and August 2022. *Id.* ¶¶ 46, 54, 58, 50. Specifically,

- On June 12, 2021, Plaintiff McCall bought one item from an MK outlet store in San Diego, California. *Id.* ¶ 54. The purse McCall purchased had a "[f]alse [r]eference [p]rice" of $348.00 and a purchase price of $139.20. *Id.*

- On May 7, 2022, Plaintiff Binder purchased two items from an MK outlet store in Elizabeth, New Jersey. *Id.* ¶ 46. Both products had a "false reference price" of $168.00 each, and Binder purchased each for $49.00. *Id.*

- On August 30, 2022, Plaintiff Waldner purchased one item from an MK outlet store in Central Valley, New York. *Id.* ¶ 50. The purse Waldner purchased had a "false reference price" of $298.00 and a "purchase price" of $178.80. *Id.*

- On July 8, 2023, Plaintiff Barraclough bought two items from an MK outlet store in Cottage Grove, Oregon. *Id.* ¶ 58. The merchandise Barraclough purchased had "false reference prices" of $298.00 and $448.00 and "purchase prices" of $79.00 and $112.00, respectively. *Id.*

According to the Plaintiffs, a "reasonable consumer would have interpreted the falsely advertised reference prices in the same manner" as the Plaintiffs, "as a representation of former

---

[3] Two of the Plaintiffs in this case, Binder and Waldner, are also plaintiffs in the recently-decided *Binder* case in this District, referenced throughout this opinion.

prices at which Defendant recently sold the items and would again soon." *Id.* ¶¶ 48, 52, 56, 60. Plaintiffs allege they would not have purchased the merchandise were it not for Defendant's false and misleading advertising. *See id.* ¶¶ 49, 53, 56, 60. Plaintiffs further allege Defendant deprived them of the "benefit of their bargain," i.e., that they did not receive the full value of that had been represented to them through the "false reference prices." *Id.* ¶¶ 31, 48, 52, 56, 60. Plaintiffs also allege that Defendant caused them to pay an "inflated price," or "price premium," for MK outlet merchandise. *Id.* ¶¶ 49, 53, 56, 60.

Plaintiffs' counsel conducted a pre-suit investigation, which analyzed merchandise offered for sale from March 2021 to June 2021 in outlet stores throughout California, New Jersey, New York, and Oregon. *See id.* ¶¶ 38, 69. Then from February to August 2022, Plaintiffs' counsel conducted a second investigation in which "every product, at every location was continuously discounted." *Id.* ¶ 38. Plaintiffs' investigation found that Defendant MK continuously listed items as on sale. *See id.* ¶¶ 38-42. From their investigations, Plaintiffs offer examples of various MK products "continuously discounted" from the price listed on the MSRP price tags or the "false reference price" for the preceding three-to-six-month observation period. *See id.* ¶¶ 38, 69.

Plaintiffs commenced this case by filing a class action complaint on May 10, 2023. *See* ECF No. 1. Plaintiffs allege Defendant MK's conduct violates New York, New Jersey, California, and Oregon state consumer protection laws.[4] *Id.* On July 14, 2023, Defendant MK

---

[4] In their complaint, Plaintiffs also cursorily allege Defendants violated the Federal Trade Commission Act ("FTCA"), *see* Compl. ¶ 4, but this claim is not properly plead. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *O'Donnell v. AXA Equitable Life Ins.*, 887 F.3d 124, 128 (2d Cir. 2018). Plaintiffs only reference the FTCA in relation to its UCL claim and specifically, the "unlawful" prong of the violation of California's UCL. *Id.* ¶¶ 160, 163.

filed a Motion to Dismiss the Complaint.  *See* ECF No. 18.  Plaintiffs filed the Amended

Complaint on August 7, 2023.  *See* ECF No. 22.  Defendant MK now moves to dismiss the

Amended Complaint pursuant to Rules 12(b)(6) and 9(b).  *See* ECF Nos. 25, 26.

## LEGAL STANDARDS

### I.     Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Sacerdote v. N.Y. Univ.*,

9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In

assessing the complaint, "[a court] must construe it liberally, accepting all factual allegations

therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Id.* at 106-07.  The

court must, however, disregard any "conclusory allegations, such as formulaic recitations of the

elements of a cause of action."  *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).

### II.    Rule 9(b) Standard

In addition to the pleading requirements under Rule 8(a), plaintiffs alleging fraud must

plead their claim with particularity under Rule 9(b) identifying "the circumstances constituting

fraud or mistake."  *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir.

2023) (quoting Rule 9(b)); *see also Suez Equity Invs.*, *L.P. v. Toronto-Dominion Bank*, 250 F.3d

87, 95 (2d Cir. 2001) ("Rule 9(b) . . . governs the pleading of fraud claims and it requires that

plaintiff plead fraud with particularity.").

A complaint satisfying the heightened pleading requirements "must: (1) specify the

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent."  *In re*

*Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (quoting *Anschutz Corp. v. Merrill*

4

*Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012)).  Further, a plaintiff must "plead events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001).  This "strong inference" can be established by either (a) "alleging facts to show that defendants had both motive and opportunity to commit fraud," or (b) "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  "Failure to satisfy the Rule 9(b) standard, if applicable, is grounds for dismissal." *McBeth v. Porges*, 171 F. Supp. 3d 216, 223 (S.D.N.Y. 2016) (citing *Lerner*, 459 F.3d at 293, and *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010)).

## DISCUSSION

Defendant MK argues that Plaintiffs' claims should be dismissed for several reasons.  First, Defendant MK contends that Plaintiffs fail to allege an economic injury sufficient to confer standing for claims under the New York, New Jersey, California, and Oregon consumer state laws.  *See* Mot. to Dismiss 15, ECF No. 26.  Second, Defendant MK alleges that Plaintiffs' subjective interpretation of alleged "false reference prices" does not meet the reasonable consumer standard.  *Id.* at 9.  Third, Defendant MK contends that the Amended Complaint does not meet the heightened pleading standard of Rule 9(b) because it fails to allege fraud with particularity.  *Id.* at 8.  The Court addresses each of these contentions in turn below.

## I.    Statutory Standing

As an initial matter, Defendant MK argues Plaintiffs lack statutory standing because they fail to state an injury, as required for Plaintiffs' various state consumer protection law claims.  *See id.* at 15.  Plaintiffs contend they suffered an economic injury in three different ways.  First,

Plaintiffs allege they would not have bought the MK products but for Defendant's alleged false advertising, and thus sustained an ascertainable loss in the form of the total purchase price they paid for the merchandise in question (the "purchase price theory"). *See* FAC ¶¶ 48-49, 52-53, 56-57, 60-61. Second, Plaintiffs allege that they did not receive the full value that Defendant MK represented they would receive when they purchased the merchandise at issue (the "benefit-of-the-bargain theory"). *Id.* ¶¶ 31, 48, 52, 56, 60. Third, Plaintiffs argue that the allegedly false reference pricing by Defendant MK artificially inflated the prices it has been able to charge. *Id.* ¶ 37. According to Plaintiffs, the false reference prices cause consumers to overvalue MK outlet products, and the increased demand resulted in higher prices. *See id.* ¶ 30. Under this theory, Defendant MK caused them to pay an "inflated price" or "price premium" for MK outlet merchandise (the "price premium theory"). *See id.* ¶¶ 2, 35 49, 53, 56, 60.

Different states recognize different theories of economic injury. As explained below, the Court concludes that Plaintiffs adequately allege economic injury sufficient to confer standing under the California and Oregon state consumer protection laws, but not under the analogous New York and New Jersey state statutes. The Court addresses each of the state consumer protection claims in turn below.

### A. New York Claims

Plaintiff Waldner brings a claim under New York General Business Law ("NY GBL") §§ 349 and 350. To plead an injury under NY GBL § 349 or § 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). Under the NY GBL, "[i]n the consumer goods context, an allegation of a defendant's deception alone does not suffice to plead injury, because a plaintiff may have received the benefit of the bargain

despite the alleged misrepresentation." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021).

Applying these principles, courts considering claims under the NY GBL have rejected Plaintiffs' three theories of economic injury (at least in the forms alleged here) as insufficient to confer standing. As explained below, this Court follows a recent decision in this District in a separate case brought by Plaintiffs Binder and Waldner and concludes that Plaintiffs have not stated a claim under New York law. *See Binder*, No. 23 Civ. 3939, slip op. at 18-31.

First, with respect to Plaintiffs' purchase price theory, under the NY GBL, "[c]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have not suffered an injury cognizable under NY GBL § 349." *Rodriguez v. It's Just Lunch, Int'l*, No. 07 Civ. 9227, 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010); *see also Binder*, No. 23 Civ. 3939, slip op. at 20 ("[P]laintiffs' first theory of injury—that Waldner would not have made her purchase without the misrepresentations made by [d]efendant—fails to establish actual injury [under New York law]." (internal quotation marks omitted)).

As for Plaintiffs' benefit-of-the-bargain theory, courts applying the NY GBL have held that a consumer bringing a misrepresentation claim may have standing where she alleges that she "did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. But courts have rejected such claims where, as here, the plaintiff did not allege defects or inferior quality, reasoning that "disappointed bargain-hunters do not suffer any actual injuries or damages simply because they did not get as good a deal as they expected." *Ham v. Lenovo (U.S.) Inc.*, 664 F. Supp. 3d 562 (S.D.N.Y. 2023).

Here, Plaintiffs do not allege defects or inferior quality. The New York Court of Appeals has made clear that the kind of deception in pricing alleged by Plaintiffs here does not amount to a form of actual damages under the NY GBL. *See Small v. Lorillard Tobacco Co.*, 720 N.E.2d

892, 897 (N.Y. 1999) (holding no injury alleged under New York law where the complaint "sets forth deception as both act and injury"). And "courts in this District have repeatedly rejected the very theory of injury alleged by plaintiffs in other outlet store cases, where, as here, a plaintiff believed she was getting a bargain based on a fictitious 'original price' and seeks compensation for her subjective disappointment upon discovering that there was never any bargain at all." *Binder*, No. 23 Civ. 3939, slip op. at 20-21.

Finally, as for Plaintiffs' price premium theory, courts applying the NY GBL have, under particular circumstances, recognized claims where a plaintiff alleges "to have paid more for the product than he or she would have if the defendant did not engage in allegedly deceptive practices." *Colpitts*, 527 F. Supp. 3d at 577. But a plaintiff alleging a NY GBL claim under a price premium theory "must allege not only that [the] defendant[ ] charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020). "This connection often takes the following form: A plaintiff alleges that a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *Id.; cf. Dorris v. Danone Waters of Am.*, No. 22 Civ. 8717, 2024 WL 112843, at *8 (S.D.N.Y. Jan. 10, 2024) (recognizing a premium purchase price injury when a product was mispresented that it was "carbon neutral"); *Colpitts*, 527 F. Supp. 3d at 576 (concluding that the word "Smokehouse®" could mislead consumers into thinking that the almonds were prepared by a natural smoking process when the product retained its smoke-flavored taste from added flavors); *Segedie v. Hain Celestial Grp., Inc*., No. 14 Civ. 5029, 2015 WL 216837, at *12 (S.D.N.Y. May 7, 2015) (recognizing a price premium injury based on label that product was "natural" or "all natural").

Here, however, Plaintiff Waldner fails to allege a unique quality or value for which she paid a premium. She therefore fails to establish standing for a NY GBL claim based on a price premium theory. Although Plaintiff repeatedly uses the word "premium," that incantation alone is insufficient under the NY GBL. *See Izquierdo v. Mondelez Int'l, Inc.*, No. 16 Civ. 04697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (noting that a simple "recit[ation of] the word 'premium' . . . does not make Plaintiffs' injury any more cognizable"). Accordingly, Plaintiff Waldner has failed to establish a cognizable injury, and her NY GBL claims are **DISMISSED.**

### B. New Jersey Claims

Plaintiff Binder asserts a claim under the New Jersey Consumer Fraud Act ("CFA"). Like the NY GBL, the NJ CFA provides a cause of action for any person who "suffers any ascertainable loss of money, or property, real or personal, as a result of a person's unlawful act." N.J.S.A. § 56:8-19. To state a claim under the NJ CFA, a litigant must plausibly allege: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011). "The New Jersey Supreme Court interprets ascertainable loss under the CFA to require a quantifiable or measurable injury and not [a] hypothetical or illusory harm." *Hoffman v. Nissan Infiniti LT*, 840 F. App'x 694, 695 (3d Cir. 2021).

Courts have recognized only two theories of ascertainable loss under the NJ CFA to date: (1) the out-of-pocket loss theory and (2) the benefit-of-the-bargain theory. To plead an out-of-pocket loss, a plaintiff must allege either: (1) "that he spent money, or in the future, needs to spend money, addressing the alleged NJ CFA violations, i.e., repair costs," or (2) that the products purchased were "essentially worthless" for their intended use. *Annecharico v. Raymour*

& *Flanigan*, No. 16 Civ. 1652, 2016 WL 7015615, at *7 (D.N.J. Nov. 30, 2016).  Here, Plaintiff Binder does not allege that she was caused to spend money on repair costs, or that the merchandise was essentially worthless for its intended use.  *See generally* FAC.  Thus, the out-of-pocket loss theory is inapplicable here.

That leaves Plaintiffs' benefit-of-the-bargain theory.  Under New Jersey law, consumers asserting injury under such a theory must allege that they were misled into buying a product that is worth less than the product that was promised.  *See Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015) (internal citations omitted).  Under this theory, a plaintiff can recover "the difference between the price paid and the value of the property had the representations been true." *Finderne Mgmt. Co. v. Barrett*, 955 A.2d 940, 957 (N.J. App. Div. 2008).

Plaintiffs' allegations here are insufficient.  In a recent New Jersey Supreme Court case with similar facts, *Robey v. SPARC Grp. LLC*, the plaintiffs alleged that they did not receive the benefit of their bargain in purchasing clothing from a retail store with "advertised 'markdowns' [that were] illusory and the reference prices [that were] fictitious." *Robey v. SPARC Grp. LLC*, 311 A.3d 463, 468 (N.J. 2024).  The plaintiffs alleged that "they did not receive the value of what was promised[;]" that is, that they did not receive the benefit of the bargain. *Id.*  But the New Jersey Supreme Court held that the plaintiffs did not "ple[a]d facts sufficient to allege an ascertainable loss." *Id.* at 473.  The New Jersey Supreme Court reasoned that "[a]lthough plaintiffs thought they were receiving clothes that defendant once sold for more money, the goods plaintiffs received are exactly what they knowingly purchased." *Id.* at *11.  That is, the plaintiffs in that case had no claim because received merchandise that was not materially different from what was promised; to state an injury, they would have had to have alleged, for

example, that there were defects of some sort that caused them to be dissatisfied with the products they purchased.

Here, Plaintiff Binder similarly "purchased and received [merchandise] that was not defective or damaged or worth less than they paid," *id.*, and accordingly, Binder does "not establish a cognizable ascertainable loss under the benefit-of-the-bargain theory." *Id.* at *12. *See also Binder*, No. 23 Civ. 3939, slip op. at 34 (a plaintiff fails to state a claim under NJ law "where, as here, there is no claim that the quality of the product was inferior."). Accordingly, Plaintiff Binder has failed to establish a cognizable injury, and her New Jersey state law claim is **DISMISSED.**

### C. California Claims

Plaintiff McCall asserts claims for violations of the California Unfair Competition Law ("UCL"),[5] False Advertising Law ("FAL"),[6] and Consumer Legal Remedies Act ("CLRA").[7] "Courts often analyze [the UCL, FAL, and CRLA] statutes together because they share similar attributes." *Quintanilla v. WW Int'l, Inc*., 541 F. Supp. 3d 331, 344 (S.D.N.Y. 2021) (citing *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014)). Defendant MK argues that Plaintiff McCall failed to plead any economic injury,

---

[5] The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

[6] The FAL provides that "[n]o prices shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately proceeding the publication of the advertisement." *Id.* § 17501.

[7] The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The CLRA specifically prohibits "[a]dvertising goods or services with intent not to sell them as advertised" and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." *Id.* § 1770(a)(9), (13).

and that she did not establish "a concrete basis for 'the difference between what the plaintiff paid and the value of what the plaintiff received.'"  Mot. to Dismiss 20.

The California Supreme Court has explained that, for a plaintiff to have standing under the UCL or FAL, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885 (2011) (emphases in original).  Likewise, to have standing to bring a claim under the CLRA, the plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage."  *Bower v. AT & T Mobility, LLC*, 127 Cal. Rptr. 3d 569, 578 (2011).  Standing under the California FAL and UCL is limited to plaintiffs who demonstrate "'some form of economic injury' because of his transactions with the defendant."  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (citing *Kwikset*, 246 P.3d at 885).  If there is standing under the CA UCL and FAL, this necessarily leads to a finding of standing under the CRLA.  *See Hinojos,* 718 F.3d at 1108.

In ascertaining economic injury under the California FAL, UCL, and CRLA, courts have identified two theories of cognizable injury relevant here.  First, under California law, a disappointed bargain hunter may suffer actual injury sufficient to confer standing based on her mistaken subjective product valuation—which is essentially Plaintiffs' benefit-of-the-bargain theory in this case.  *See Hinojos*, 718 F.3d at 1104; *accord McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("[A] plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value.").  In *Hinojos*, the Ninth Circuit reversed a district court's dismissal of the plaintiff's California UCL and FAL claims on statutory standing grounds.  718 F.3d at 1102.  The Ninth

Circuit held that the plaintiff sufficiently established statutory standing when he alleged that he lost money by purchasing merchandise that had been marked down from a fictitious "original" or "regular" price. *Id.* The plaintiff "alleged that the advertised discounts conveyed false information about the goods he purchased, i.e., that the goods he purchased sold at a substantially higher price at Kohl's in the recent past and/or in the prevailing market." *Id.* at 1105. Here, Plaintiff McCall asserts that a "reasonable consumer would have interpreted the false[ly] advertised reference prices in the same manner" as she did, i.e., "as a representation of former prices at which Defendant recently sold the items and would again soon," and that she did not receive the benefit of her bargain. FAC ¶ 56. Based on the benefit-of-the-bargain theory, the Court holds that Plaintiff McCall's allegations are sufficient to allege economic injury under California law.

California law also recognizes an "overpayment" theory of injury, which requires a plaintiff to show that they "paid more for a product than she otherwise would have due to a defendant's false representations about the product." *See McGee*, 982 F.3d at 706; *accord Hinojos*, 718 F.3d at 1105 (concluding that the plaintiff alleged economic injury under the UCL and FAL because "he would not have purchased the goods in question absent [the alleged] misrepresentation"). This is essentially Plaintiffs' price premium theory in this case. *See supra* Section I.

Accordingly, Plaintiff McCall adequately alleges economic injury (via Plaintiffs' benefit-of-the-bargain and price premium theories) sufficient to confer standing under California's UCL, FAL, and, therefore, the CRLA.

### D. Oregon Claims

Plaintiff Barraclough asserts a claim under the Oregon Unlawful Trade Practices Act ("UTPA"). The Oregon UTPA "was enacted as a comprehensive statute for the protection of consumers from unlawful trade practices." *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 21 (Or. 2015). A broad reading of UTPA is consistent with the legislature's intent that courts interpret the UTPA liberally to protect consumers. *See Clark v. Eddie Bauer LLC*, 532 P.3d 880 (Or. 2023). To establish an UTPA violation, a plaintiff must show that "(1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice." *Pearson*, 361 P.3d at 28.

The ascertainable loss requirement "connotes generally that it is one 'capable of being discovered, observed, or established.'" *Id.* (quoting *Scott v. W. Int'l Surplus Sales, Inc.*, 517 P.2d 661, 663 (1973)). Although a plaintiff "is not required to prove the *amount* of ascertainable loss in order to recover nominal damages in a claim for unlawful trade practices, there must, at least, be *some* cognizable loss." *Hedrick v. Spear*, 907 P.2d 1123, 1126 (Or. 1995) (emphasis in original). To meet this standard, a "loss must be objectively verifiable, much as economic damages in civil actions must be." *Id.*

The Oregon Supreme Court has recognized a purchase price theory of ascertainable loss. *See Pearson*, 361 P.3d at 25 (2015) ("[T]he purchaser may have suffered a loss in the form of buying something he or she would not have otherwise bought."); *Walters v. Vitamin Shoppe Indus.*, 701 F. App'x 667, 670 (9th Cir. 2017) ("[H]e would not have purchased the product but for the alleged misrepresentations. The ascertainable loss, therefore, is the monetary value of a product that [plaintiff] would not otherwise have bought.").

Here, Plaintiff Barraclough asserts a purchase price theory of ascertainable loss, alleging that she would not have purchased two MK bags with a "false reference prices" of $298.00 and $448.000 and purchase prices of $79.00 and $112.00 respectively, if not for Defendant MK's misrepresentations of the item's "original price." *Id.* ¶ 58.  Accordingly, the Court concludes that Plaintiff Barraclough's allegations are sufficient to allege economic injury to sustain a claim under the Oregon UTPA at this stage of the litigation.

## II.    The Reasonable Consumer Standard

Having determined that Plaintiffs have sufficiently alleged standing for purposes of their claims under California and Oregon law, the Court now turns to Defendant MK's argument that Plaintiffs' claims should be dismissed because they fail the "reasonable consumer test."  Mot. to Dismiss 8.  To plead deceptive or materially misleading practices under state consumer protection statutes, a plaintiff must demonstrate that defendant's pricing scheme is false or misleading to a "reasonable consumer."  The "reasonable consumer test" requires plaintiffs to demonstrate that a reasonable consumer would have been deceived by the alleged representations.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citations omitted) ("To prevail on their consumer fraud claims under New York and California law, Plaintiffs must establish [that]. . . allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances."); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("[C]laims under these California statues are governed by the 'reasonable consumer' test.").

According to Plaintiffs, a "reasonable consumer would have interpreted the false advertised reference prices in the same way" as did the named Plaintiffs, "as a representation of former prices at which Defendant recently sold the items and would again soon."  FAC ¶¶ 48,

52, 56, 60.  Defendant MK argues that the "Amended Complaint is devoid of allegations to support a reasonable consumer's view of prices at outlet stores" and that Plaintiffs impute their own subjective interpretation for that of a reasonable consumer.  Def.'s Reply Br. 7, ECF No. 29.

The "reasonable consumer" standard, however, is normally a "question of fact" that is best left to a jury and not decided by the court at the motion to dismiss stage.  *See, e.g., Duran*, 450 F. Supp. at 346 (noting the reasonable consumer determination "is generally a question of fact not suited for resolution at the motion to dismiss stage"); *Strumlauf v. Starbucks Corp.*, No. 16 Civ. 01306, 2016 WL 3361842, at *6 (N.D. Cal. June 17, 2016) (noting that "courts will grant a motion to dismiss on the basis of the reasonable consumer test" only in "rare situations"); *see also Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 566 (9th Cir. 2017) (internal citation omitted) (reversing district court dismissal where, as here, the reasonable consumer test applies to a plaintiff's underlying claims, it is a "rare situation in which granting a motion to dismiss is appropriate").  Dismissal is warranted only where it is "*impossible* for the plaintiff to prove that a reasonable consumer was likely to be deceived."  *Williams*, 552 F.3d at 939 (emphasis added).

That is not the case here.  Plaintiffs have adequately pled that a reasonable consumer would perceive the challenged pricing practices as they did.  Plaintiff McCall from California, for instance, observed a MK item's "original price" and "believed she was getting a significant bargain on the merchandise."  FAC ¶ 48.  Further reinforcing her impression, her receipt stated she received a "Super-Simple Discount New Price: $139.20."  *Id.* ¶ 56.  Plaintiffs allege that a "reasonable consumer would have interpreted the false advertised reference price in the same manner as Plaintiff McCall—as a representation of a former price at which Defendant recently sold the item and would again soon."  *Id.*  Similarly, in Oregon, Plaintiff Barraclough relied on

"the items' original prices—both styled as "Our Price" on the price tags and the accompanying signage . . . [she] felt that the discounted price would likely not last, and believed she was getting a significant bargain on the merchandise." *Id.* ¶ 60.  Plaintiffs allege that a "reasonable consumer would have interpreted the false advertised reference price in the same manner as Plaintiff Barraclough—as a representation of a former price at which Defendant recently sold the item and would again soon." *Id.*  It may be the case that discovery will "reveal that the proverbial 'reasonable consumer acting reasonably' would not perceive that [alleged false] message, let alone be misled by it." *Irvine v. Kate Spade & Co.*, No. 16 Civ. 7300, 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017).  But at this stage, the Court cannot hold, as a matter of law, that it is impossible for the Plaintiffs to prove that the pricing practices at issue are misleading to a reasonable consumer.

### III.     Sufficiency of Plaintiffs' Allegations under Rule 9(b)

The Court now turns to Defendant MK's contention that Plaintiffs' claims do not meet the heightened Rule 9(b) pleading standard.  Following the recent *Binder* decision in this District referenced *supra*, this Court concludes that Plaintiffs in this case have satisfied the pleading requirements of Rule 9(b).  *See Binder*, No. 23 Civ. 3939, slip op. at 42.

#### A.  Applicability to Rule 9(b) to Plaintiffs' Remaining State Law Claims

Each of Plaintiffs' claims are expressly based on their allegations that Defendant MK engages in fraudulent price discount advertising by listing "false reference pricing" on its products.  Although the relevant California and Oregon state consumer protection statutes do not include fraud as an element, courts have held that they are subject to heightened pleading

requirement because they are premised on allegations of fraud.[8]  *See, e.g., Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (concluding FAL claims are subject to Rule 9(b)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1145 (D. Or. 2020) (applying Rule 9(b)'s heightened pleading standards to Oregon UTPA claims).  And the parties do not dispute that the Rule 9(b) pleading standards apply to the California and Oregon state claims.  *See* Mot. to Dismiss 8; Pls.' Opp'n 4, ECF No. 27.

As previously discussed, Rule 9(b) requires that a plaintiff specify "'the who, what, when, where and how' of the alleged fraud[;]" identifying which statements were fraudulent, who made the statements to whom, and when and where the statements were made.  *Alterescu v. N.Y. City Dep't of Educ.*, No. 21 Civ. 925, 2022 WL 3646050, at *16 (S.D.N.Y. Aug. 23, 2022); *see also U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Resp., Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (stating that a complaint meeting the heightened pleading standard "(1) specif[ies] the statements that the plaintiff contends were fraudulent, (2) identif[ies] the speaker, (3) state[s] where and when the statements were made, and (4) explain[s] why the statements were fraudulent").  These details principally serve "to provide a defendant with fair notice of a plaintiff's claim."  *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting *O'Brien v.*

---

[8] Whether the Plaintiffs' state law claims must comply with Rule 9(b) due to the complaint "sounding" or being "grounded in fraud" is an issue of federal law, not state law; and while this Court considers out-of-Circuit precedent for guidance as to the applicability and requirements of Rule 9(b), it is bound only by the decisions of the Second Circuit (and, of course, the Supreme Court).  *See Northwestern Mut. Life Ins. Co. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 390, 396 (S.D.N.Y. 2003) (concluding that "[t]his Court is required to follow the precedent of the Court of Appeals for the Second Circuit with respect to the interpretation and application of Rule 9(b)," regardless of which state's law governs the underlying claim).

*Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).  The adequacy of

particularized allegations under Rule 9(b) is "case- and context-specific."  *U.S. ex rel. Chorches*,

865 F.3d at 81 (internal quotation marks omitted); *accord Variblend Dual Dispensing Sys. LLC*

*v. Crystal Int'l. (Grp.) Inc.*, No. 18 Civ. 10758, 2021 WL 1198834, at *4 (S.D.N.Y. Mar. 30,

2021).[9]

### B.  The "Who, What, When, Where, and How" of the Alleged Fraud

*The "who, what, when, and where."*  Defendant MK contends that Plaintiffs have not

plausibly alleged the circumstances constituting fraud with requisite particularity under the

heightened pleading requirements of Rule 9(b).  *See* Mot. to Dismiss 8.  But with regards to the

remaining California and Oregon state claims, Plaintiffs specifically allege the following:

- On July 8, 2023 (the "when"), Plaintiff Barraclough (the "who") bought two items from an MK outlet store in Cottage Grove, Oregon (the "where").  *See* FAC ¶ 58. The two items Barraclough purchased had a "[f]alse [r]eference [p]rice" of $298.00 and $448.00 and a purchase price of $79.00 and $112.00, respectively.  *Id.* Barraclough also provides the item name and style number for each item purchased (the "what").  *Id.*

---

[9] While Rule 9(b) generally imposes a heightened pleading standard, the Court notes that there is some authority suggesting that a "relaxed" version of that standard might apply here.  "There are a few situations in which the stringent requirements of Rule 9(b) may be relaxed.  The Second Circuit applies a relaxed pleading standard when a plaintiff is not in a position to know specific facts until after discovery and 'when facts are peculiarly within the opposing party's knowledge.'"  *U.S. ex rel. Mooney v. Americare, Inc.*, No. 06 Civ. 1806, 2013 WL 1346022, at *3 (E.D.N.Y. Apr. 3, 2013) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).  Given that an outlet store's pricing practices might only be known to the store itself, some courts have held that allegations similar to those here are subject to this "relaxed" form of Rule 9(b)'s requirements.  *See, e.g.*, *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017) ("Here, the particular facts as to whether the Compared To prices are fictitious are likely only known to Neiman Marcus.  Without an opportunity to conduct any discovery, [plaintiff] Rubenstein cannot reasonably be expected to have detailed personal knowledge of Neiman Marcus's internal pricing policies or procedures for its Last Call stores.").  But not all courts have applied this "relaxed" version of 9(b)'s requirements in this context.  *See Binder*, No. 23 Civ. 3939, slip op. at 41 (declining to impose a relaxed 9(b) standard in context of outlet store case).  In any event, the Court need not determine which version of the Rule 9(b) standard applies here because it concludes that Plaintiffs' allegations are sufficient even under the normal, more rigorous 9(b) standard.

- Plaintiff McCall (the "who") bought one item from an MK outlet store in San Diego, California (the "where") on June 12, 2021 (the "when"). *Id.* ¶ 54. The purse McCall purchased had a "[f]alse [r]eference [p]rice" of $348.00 and a purchase price of $139.20. McCall identifies the purse with its item name and style number (the "what"). *Id.*

These allegations are sufficiently detailed for Defendant MK to defend against Plaintiffs' claims. In analogous cases where the court held a claim satisfied Rule 9(b), the plaintiffs alleged facts with the same level of specificity as Plaintiffs have done so here. *See, e.g.*, *Binder*, No. 23 Civ. 3939, slip op. at 43 (concluding that similar allegations were sufficient to satisfy 9(b) as to the who, what, when, and where of the alleged fraud); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558 at 567-68 (S.D.N.Y. 2017) (holding plaintiffs alleged "their purchases in sufficient detail to satisfy Rule 9(b)" by alleging "the critical facts necessary for Coach to defend against their claims, including the style number for each item purchased, the location at which the item was purchased, the approximate date of the purchase, the advertised MFSRP [Manufacturers' Suggested Retail Prices] and that they paid less than the MFSRP"); *Jovel v. i-Health, Inc.*, No. 12 Civ. 5614, 2013 WL 5437065, at *11 (E.D.N.Y. Sept. 27, 2013) (determining "ample particularization" of the plaintiff's CRLA and UCL allegations because the plaintiff identified "where the allegedly fraudulent statements were made, namely, at a particular Wal-Mart in Los Angeles," and "the specific time when she purchased [the product]"); *Stathakos v. Columbia Sportswear Co.*, No. 15 Civ. 4543, 2016 WL 1730001, at *3 n.5 (N.D. Cal. May 2, 2016) (holding that a plaintiff satisfied Rule 9(b), where among other things, it listed "the date plaintiffs purchased items from defendants; the number of items bought; the location of the store; the [s]ales price" and "the product codes and descriptors" of the items purchased); *John v. AM Retail Grp.*, No. 17 Civ. 727, 2018 WL 1400718, at *7 (S.D. Cal. Mar. 20, 2018) (holding the plaintiff has met Rule 9(b) by including the date he purchased the product, the store where he

purchased the product, a description of the purchased product, a description of the advertising, and pictures attached as exhibits depicting the products and their corresponding advertisements).

**The "how and why."**  Defendant MK also argues Plaintiffs have not adequately alleged "how and why the reference prices Plaintiffs actually observed were false and deceptive."  Mot. to Dismiss 13.  Defendant criticizes Plaintiffs' investigation because, among other things, the investigation did not include the prices of the specific merchandise that Plaintiff purchased, only included a few exemplar items, and observed the price of products on only two days during the three- or six-month time period of Plaintiffs' investigation.  *See* Mot. to Dismiss 13.

Plaintiffs' 2021 pre-suit investigation, however, shows "why" the reference prices are false: Defendant MK "continuously advertised items for sale at purported 'discounted' prices," but "the items were never offered for sale at its false reference prices for any substantial period of time."  FAC ¶ 122; *see also id* ¶¶ 18, 42.  The investigation included outlet locations in California and Oregon, FAC ¶ 38, and provided samples of merchandise "discounted" from the price listed on the MSRP on price tags for the preceding three-to-six-month observation period. *Id.* ¶¶ 38, 69; *see also* Exs. A-B, ECF Nos. 22-1 to 22-2.  And as for the "the 'how' of th[e] fraud," Plaintiffs have alleged that "consumers believe the MFSRPs are former prices."  *Marino* 264 F. Supp. 3d at 568.  *See also supra* Section II.

These allegations are enough to satisfy Rule 9(b).  As the court in the recent *Binder* case determined, Plaintiffs' "investigation reveal[ing] that numerous items sold by defendant essentially remained on perpetual sale over the course of a year, marked down from substantially higher reference prices" is "sufficiently detailed to establish, with sufficient particularity, a broader pattern in defendant's pricing practices."  *Binder*, No. 23 Civ. 3939, slip op. at 45-46. *See also Nunez v. Saks Inc.*, 771 F. App'x 401, 403 (9th Cir. 2019) (finding it sufficient to allege that products at an outlet store advertised a fictitious "market price" on the price tags); *Marino*,

264 F. Supp. 3d at 568 (holding that plaintiffs sufficiently alleged "the 'why' of this fraud: the MFSRPs are fake because [Defendant] never sells these items for those prices").

And while Defendant complains that the investigation does not reveal the prices of the particular items purchased by Plaintiffs at all times throughout the investigation period, "the Complaint nevertheless alleges sufficient facts about a uniform course of conduct to plausibly support a conclusion that the same allegedly fraudulent practices applied to the items Plaintiff purchased." *Dahlin v. Under Armour, Inc.*, No. 20 Civ. 3706, 2020 WL 6647733, at *4 (C.D. Cal. July 31, 2020). "[I]t is entirely reasonable to conclude that plaintiffs' particular items were subject to the same pricing practices that defendant applied to the numerous other items included in plaintiffs' pre-suit investigation." *Binder*, No. 23 Civ. 3939, slip op. at 46; *see also id.* at 47 ("[Plaintiffs] are not required to allege the full daily detailed pricing histories of the products purchased. To hold otherwise would place unrealistic demands on plaintiffs because information regarding the release date of new products is information that is uniquely within defendant's control."); *Jacobo v. Ross Stores, Inc.*, No. 15 Civ. 04701, 2016 WL 3483206, at *3 (C.D. Cal. June 17, 2016) ("[N]o authority requires [p]laintiffs to include [further investigation details] in the pleadings; arguably that level of evidentiary detail would be improper, even under Rule 9(b).").

Accordingly, the Court holds that Plaintiffs have adequately alleged the "who, what, when, where, and how" of the Defendant's alleged fraud. Based on the foregoing, Defendant's Motion to Dismiss based upon failure to satisfy Rule 9(b) is **DENIED**.

## IV.    Leave to Amend

Plaintiffs seek leave to file an amended complaint in alternative to the denial of Defendant's Motion to Dismiss the Amended Complaint. *See* Opp'n to Mot. to Dismiss 25. The Federal Rules of Civil Procedure provide that "a party may amend its pleadings . . . [with] the

court's leave[,]" and the "court should freely give leave when justice so requires."  Fed. R. Civ.

P. 15(a)(2).  Five factors guide the exercise of a district court's discretion to allow leave to

amend: (1) undue delay; (2) bad faith or dilatory motive on part of movant; (3) repeated failure

to cure deficiencies; (4) undue prejudice; and (5) futility of the amendment.  *See Foman v. Davis*,

371 U.S. 178, 182 (1962).  Leave to amend may be denied if "amendment would be futile."

*Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (citing *Tocker v. Philip Morris Cos.*, 470

F.3d 481, 491 (2d Cir. 2006)).  "[An amendment] is futile if it fails 'to cure prior deficiencies.'"

*Id*. (quoting *Panther Partners, Inc. v. Ikanos Commc'ns, Inc*., 681 F.3d 114, 119 (2d Cir. 2012)).

        Plaintiffs have already previously amended the complaint.  *See* ECF Nos. 1, 22.

Plaintiffs have not suggested how they would further amend the complaint in response to the

Motion to Dismiss.  They did so despite being on notice of Defendant's arguments regarding the

New York and New Jersey state law claims when they filed the First Amended Complaint, as

Defendant's initial motion to dismiss raised comparable arguments.  *See* Mot. to Dismiss 18,

ECF No. 18.  There is no right to amend under these circumstances.  *See Nat'l Credit Union*

*Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018) ("[W]hen a plaintiff was

aware of the deficiencies in his complaint when he first amended, he clearly has no right to a

second amendment even if the proposed second amended complaint in fact cures the defects of

the first." (cleaned up)).  In any event, Plaintiffs do not appear to be able to correct the

deficiencies concerning their New York and New Jersey state claims, because their theories of

economic injury are not cognizable under the NY GBL or the NJ CFA.  Accordingly, leave to

amend would be futile as to those claims.  Considering these circumstances, the Court will not

grant leave to amend.

**CONCLUSION**

For the foregoing reasons, it is hereby ordered that Defendant's Motion to Dismiss the Amended Complaint, ECF No. 25, is **GRANTED in part** with regards to Demetra Binder and Angela Waldner and **DENIED in part** with regards to Jennifer McCall and JoEllen Barraclough.

Counsel are directed to confer with each other in good faith.  The parties are hereby **ORDERED** to file a joint status letter and a joint proposed Civil Case Management Plan and Scheduling Order by **July 19, 2024**.  The letter shall state whether the parties request a referral for mediation through the District's Mediation Program or before a Magistrate Judge.  The parties shall use this Court's form Proposed Civil Case Management Plan and Scheduling Order, which is also available at: https://nysd.uscourts.gov/hon-dale-e-ho.

The Clerk of Court is respectfully directed to terminate ECF No. 25.

SO ORDERED.

Dated: June 28, 2024
       New York, New York

_____
          DALE E. HO
      United States District Judge